UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

───────────────

No. 15-cv-47 (RJS)

───────────────

KWOK LEUNG YAN,

Plaintiff,

VERSUS

ZIBA MODE INC., *et al.*,

Defendants.

───────────────

OPINION AND ORDER
March 29, 2016

───────────────

RICHARD J. SULLIVAN, District Judge:

Plaintiff Kwok Leung Yan brings this action against his former employer, a hair salon, and its owner alleging that Defendants discriminated against him based on his race and national origin, created a "hostile work environment," and retaliated against him when he complained of the unlawful discrimination. Now before the Court is Defendants' motion to dismiss the First Amended Complaint for failure to state a claim. (Doc. No. 21.) For the reasons that follow, Defendants' motion is granted.

I. BACKGROUND

A. Facts

In July 2012, Plaintiff began working as a hair stylist at Defendant Ziba Mode Inc. ("Ziba") in Manhattan, which is owned by Defendant Alonso Salguero.[1] (FAC ¶¶ 13, 19.) Plaintiff, who is Chinese, alleges that

---

[1] The following facts are taken from the First Amended Complaint. (Doc. No. 10 ("FAC").) The Court also considers arguments in Defendants' memorandum of law (Doc. No. 24 ("Mem.")), Plaintiff's opposition (Doc. No. 26 ("Opp'n")), Defendants' reply (Doc. No. 27 ("Reply")), and the accompanying declarations (Doc. Nos. 23, 25). Because Plaintiff may not augment his pleading through his submissions opposing dismissal, *see Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998), the Court disregards allegations raised for the first time in his opposition papers (*see* Opp'n 8–9; Doc. No. 25-1 ¶¶ 5–7). And since the Court must assume the First Amended Complaint's allegations to be true, the Court also disregards Defendants' averments that Plaintiff performed his job unsatisfactorily (Mem. 2) and disregards the employee handbook introduced by Defendant (Doc. No. 23-4), given that Defendants provide no evidence Plaintiff relied on it in bringing suit, *see Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

almost immediately following his hiring, Defendants began to treat him differently than his non-Chinese co-workers. Specifically, Plaintiff alleges that co-workers commented on his foreign accent and his claimed inability to communicate with the salon's clients. (*Id.* ¶¶ 21–22.) Plaintiff further alleges that on one occasion he was required to pay for the haircut of a dissatisfied customer. According to Plaintiff, Ziba's white employees were not similarly forced to pay for the haircuts of dissatisfied customers. (*Id.* ¶ 23.)

On February 6, 2014, Plaintiff told Ziba's manager, Olivia Pezeron, that he felt he was being discriminated against because of his race and national origin and that he was planning to file a complaint of discrimination with the City of New York. (*Id.* ¶ 25.) Later that day, Plaintiff had a conversation with Pezeron and Salguero, who participated via telephone. During that conversation, the parties discussed statements made by Plaintiff's immediate supervisor, Jeffrey Foo, during his evaluation of Plaintiff's skills as a hair-cutter. (*Id.* ¶ 27.) Specifically, Salguero told Plaintiff: "I think what he (Jeffrey Foo) meant is that he has your back. What that means is that he definitely believes in you." (*Id.* ¶ 28.) Pezeron then added: "[Foo] thinks you are a good technician and we think the same thing too." (*Id.* ¶ 29.) Salguero also stated that Foo "is giving you another chance . . . [s]ince you are not up to the standards of the quality we need, so you are either going to comply with everything we put on your plate or you have to leave the salon. . . . So you need to come to classes and if you're not, then you're out." (*Id.* ¶ 30.) At that point during the conversation, Pezeron told Salguero that Plaintiff was "threatening to do a lawsuit to go to the NYPD and blah blah blah because he said we're racist against him because he's Asian." (*Id.* ¶ 31 (emphasis removed).) Salguero then angrily responded, "You know what? This is the reason to fire [Plaintiff] and do it right now. Okay? I want you to fire [Plaintiff] right now and I want you to now state that reason. We're not going to be intimidated, okay? And this is not how we treat our employees so I am not going to take that. You are fired." (*Id.* ¶ 32 (emphasis removed).) Plaintiff was terminated that day. (*Id.* ¶¶ 38–40.)

B. Procedural History

On July 3, 2014, nearly five months after his termination, Plaintiff filed an administrative complaint with the EEOC alleging discrimination based on race and national origin. (*Id.* ¶ 5.) He received a right-to-sue letter from the EEOC on October 8, 2014 (*id.* ¶ 8), and on January 6, 2015, Plaintiff commenced this action (Doc. No. 1), bringing claims for discrimination, hostile work environment, and retaliation in violation of 42 U.S.C. § 1981 ("Section 1981"), Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e, *et seq.*) ("Title VII"), the New York State Human Rights Law (N.Y. Exec. L. § 296) ("NYSHRL"), and the New York City Human Rights Law (N.Y.C. Admin. Code § 8–107, *et seq.*) ("NYCHRL"). In addition, Plaintiff brings a claim for "interference with protected rights" pursuant to NYCHRL.

On March 25, 2015, Plaintiff filed the First Amended Complaint. (Doc. No. 10.) Defendants filed their motion to dismiss on June 3, 2015 (Doc. No. 21), which was fully briefed on June 24, 2015 (Doc. Nos. 26, 27).

II. STANDARD OF REVIEW

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must "provide the grounds upon which [the] claim rests." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,

2

493 F.3d 87, 98 (2d Cir. 2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."). To meet this standard, plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing a Rule 12(b)(6) motion to dismiss, a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *ATSI Commc'ns*, 493 F.3d at 98. However, that tenet "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Thus, a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. If the plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Id.* at 570.

### III. DISCUSSION

#### A. Individual Liability

Before proceeding to the substance of Plaintiff's claims, the Court notes that "individuals are not subject to liability under Title VII." *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000) (per curiam); *see also Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1241 n.2 (2d Cir. 1995) ("Supervisory personnel may not be held individually liable under Title VII."). Accordingly, Plaintiff's claims for discrimination, hostile-work environment, and retaliation brought under Title VII against Salguero are dismissed.

However, individuals may be liable under Section 1981, so long as a plaintiff shows "some affirmative link to causally connect the actor with the discriminatory action." *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir. 2000). Similarly, under NYSHRL an individual may be subject to liability if he "actually participates in the conduct giving rise to a discrimination claim." *Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004)) NYCHRL also contemplates individual liability for "an employee or an agent of the employer in question." *Gorman v. Covidien, LLC*, No. 13-cv-6486 (KPF), 2015 WL 7308659, at *11 (S.D.N.Y. Nov. 19, 2015) (citations and internal quotation marks omitted). Accordingly, Plaintiff's claims against Salguero brought under Section 1981, NYSHRL, and NYCHRL are not automatically dismissible.

#### B. Discrimination Based on Race and National Origin

Plaintiff claims that he was discriminated against, and ultimately terminated, on the basis of his Chinese ethnicity. (FAC ¶ 33–38.) Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Thus, Section 1981 "outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment." *Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 224 (2d Cir. 2004). Title VII similarly makes it unlawful for an employer "to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Because "[t]he

3

same core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in employment in violation of [Section] 1981," *Wiercinski v. Mangia 57, Inc.*, 787 F.3d 106, 113 (2d Cir. 2015) (citations and internal quotation marks omitted), the Court analyzes them in tandem unless otherwise noted.

A plaintiff alleging employment discrimination in violation of Section 1981 and Title VII must "include reference to sufficient facts to make its claim plausible . . . in light of the presumption that arises in the plaintiff's favor [set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)] in the first stage of the litigation." *Littlejohn v. City of New York*, 795 F.3d 297, 310 (2d Cir. 2015). "[W]hile a discrimination complaint need not allege facts establishing each element of a prima facie case of discrimination [under *McDonnell Douglas*] to survive a motion to dismiss, it must at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed," *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014) (citations and internal quotation marks omitted), and courts within the Second Circuit often use the *prima facie* case's elements as "an outline of what is necessary to render [a plaintiff's employment discrimination] claims for relief plausible," *Johnson v. Morrison & Foerster LLP*, No. 14-cv-428 (JMF), 2015 WL 845723, at *3 (S.D.N.Y. Feb. 26, 2015) (quoting *Sommersett v. City of New York*, No. 09-cv-5916 (LTS) (KNF), 2011 WL 2565301, at *5 (S.D.N.Y. June 28, 2011)). Accordingly, "what must be plausibly supported by facts alleged in the complaint," consistent with the *McDonnell Douglas* framework, "is [1] that the plaintiff is a member of a protected class, [2] was qualified, [3] suffered an adverse employment action, and [4] has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn*, 795 F.3d at 311.

Here, there is no dispute that Plaintiff has satisfied the first three *prima facie* requirements: (1) Plaintiff is a member of a protected class on account of his Chinese nationality; (2) he was qualified for the position sought in light of his prior experience and training, and the fact that he was hired by Defendants; and (3) his termination is, of course, "a materially adverse change in the terms and conditions of employment," as required to meet the third element. *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 404 (S.D.N.Y. 2014) (quoting *Mathirampuzha v. Potter,* 548 F.3d 70, 78 (2d Cir. 2008)).

As for the fourth element, Plaintiff alleges that he was "treated differently because he was Chinese." (FAC ¶ 21.) However, to support this assertion, Plaintiff provides merely two examples of the purported differential treatment. First, Plaintiff vaguely alleges that his co-workers "often made comments about Plaintiff not being able to communicate with his clients because of his accent." (*Id.* ¶ 22.) Second, Plaintiff alleges that after a dissatisfied client refused to pay for a haircut provided by Plaintiff, Defendants required Plaintiff to pay for the haircut out of his own pocket. (*Id.* ¶ 23.) Plaintiff avers that Ziba's white employees were not similarly forced to pay for dissatisfied customers' haircuts. (*Id.*)

With respect to Plaintiff's co-workers' remarks, verbal comments may evince discriminatory motivation when a plaintiff shows that "a nexus exists between the allegedly discriminatory statements and a defendant's decision to discharge the plaintiff." *Zhang v. Barr Labs., Inc.*, No. 98-cv-5717 (DC), 2000 WL 565185, at *4

4

(S.D.N.Y. May 8, 2000). In assessing whether a remark is "probative of discriminatory intent," courts frequently weigh the following factors: "(1) who made the remark," (i.e., whether it was a "decision-maker, a supervisor," or a low-level colleague); "(2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process)." *Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010)).

Here, Plaintiff's allegation that his co-workers made critical comments regarding his accent fails to raise an inference of discriminatory motivation. As for the first factor, the remarks at issue were made by unnamed and unnumbered co-workers, and there are no allegations that the comments were made by supervisors or decision-makers or that Salguero encouraged, or even knew about, the unspecified statements. With respect to the second factor, the First Amended Complaint contains no allegations concerning the frequency or temporal proximity of the comments to Plaintiff's termination. Under the third factor, the fact that co-workers "commented upon" Plaintiff's accent and his difficulty communicating with clients (FAC ¶ 22) may weigh very slightly in Plaintiff's favor. *See Manko v. Deutsche Bank*, 554 F. Supp. 2d 467, 478 n.36 (S.D.N.Y. 2008) (finding that employer's comments regarding employee's accent "may be probative of discriminatory intent."). However, with respect to the fourth factor, the First Amended Complaint provides no details regarding the context in which the remarks were made and whether they were related to Defendants' decision to terminate Plaintiff. After carefully weighing these factors, the Court finds that these remarks lack the requisite "causal nexus" to Defendants' decision to terminate Plaintiff. *Woodward v. TWC Media Sols., Inc.*, No. 09-cv-3000 (BSJ) (AJP), 2011 WL 70386, at *7 (S.D.N.Y. Jan. 4, 2011) (finding that "derogatory statements" were merely "stray remarks" where, as here, Plaintiff did not demonstrate "how such comments affected or were related to the termination decision."); *see also Mesias v. Cravath, Swaine & Moore LLP*, 106 F. Supp. 3d 431, 438 (S.D.N.Y. 2015) (same); *Manko*, 554 F. Supp. 2d at 479 n.36 (same).

Similarly, Plaintiff's allegation that Defendants disparately enforced their "unsatisfactory-hair cut policy" is equally inadequate to raise an inference that he was terminated on account of his race. To be sure, "[a] showing of disparate treatment – that is, a showing that the employer treated plaintiff less favorably than a similarly situated employee outside his protected group – is a recognized method of raising an inference of discrimination for purposes of making out a *prima facie* case." *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (citation and internal quotation marks omitted). However, to make such a showing, "the plaintiff must compare [him]self to employees who are 'similarly situated in all material respects.'" *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999) (quoting *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997)). The "similarly situated" standard "varies somewhat from case to case and . . . must be judged based on (1) whether the plaintiff and those he maintains were similarly situated were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness." *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000). "There should be an objectively identifiable basis for comparability." *Id.* (citation and internal quotation marks omitted). Thus, "[t]he

5

standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical." *Id.*

Here, the First Amended Complaint fails to raise even a minimal inference of discriminatory intent based on disparate treatment. First, Plaintiff alleges only a single episode of disparate treatment. *Foxworth v. Am. Bible Soc'y*, No. 03-cv-3005 (MBM), 2005 WL 1837504, at *9 n.9 (S.D.N.Y. July 28, 2005) (dismissing discrimination claim while noting that "Plaintiff's single concrete example of disparate treatment . . . shows the relative weakness of plaintiff's claim"), *aff'd sub nom. Mitchell-Foxworth v. Am. Bible Soc'y*, 180 F. App'x 294 (2d Cir. 2006). Moreover, while Plaintiff alleges "on information and belief" that Defendant ZIBA's white employees were not similarly forced to pay out-of-pocket for non-paying customers' haircuts (FAC ¶ 23), "the Amended Complaint is otherwise silent as to these comparators," *Henry*, 18 F. Supp. 3d at 408, and fails to plead any facts regarding how these employees' identities, experience levels, and conduct compared to Plaintiff's, *id.*; *see also Williams v. N.Y.C. Health & Hosp. Corp.*, No. 08-cv-4132 (RRM) (LB), 2010 WL 2836356, at *4 (E.D.N.Y. July 16, 2010) (dismissing Title VII claim where plaintiff merely alleged that "'[u]pon information and belief, males got paid when they were out sick but females [did] not,'" and failed to "specify any facts to support her claim that males were indeed treated differently than females in regard to sick-leave pay."); *see also T.P. ex rel. Patterson v. Elmsford Union Free Sch. Dist.*, No. 11-cv-5133 (VB), 2012 WL 860367, at *6 (S.D.N.Y. Feb. 27, 2012) ("[T]o withstand a motion to dismiss, a plaintiff must allege specific examples of others similarly situated who were treated more favorably.").

Plaintiff's employment discrimination claim is further undermined by his allegations regarding the conversation that took place immediately prior to his termination. Specifically, Plaintiff alleges that just moments before his termination, Salguero told him that Defendants "ha[ve] [his] back" and "definitely believe[] in him" and think he is a "good technician." (FAC ¶¶ 28–29.) These comments belie any inference of discriminatory motivation in his firing. *See James v. N.Y. Racing Ass'n*, 233 F.3d 149, 153 (2d Cir. 2000) (noting that "it is difficult to impute bias against plaintiff's protected class where the actor who made the adverse employment decision against plaintiff also made a recent favorable employment decision regarding plaintiff" (citing *Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 560 (2d Cir.1997))).

For these reasons, Plaintiff fails "to give plausible support to a minimal inference of discriminatory motivation." *Littlejohn*, 795 F.3d at 311. Accordingly, Plaintiff's Title VII and Section 1981 claims alleging employment discrimination based on race and national origin are dismissed.

### C.  Hostile Work Environment

Plaintiff next asserts that Defendants' actions led to a hostile work environment based on his race and national origin. (Opp'n at 7–10.) In order to establish a hostile-work-environment claim under Title VII and Section 1981, "a plaintiff must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Littlejohn*, 795 F.3d at 320–21 (citation and internal quotation marks omitted). In other words, a plaintiff must show "either that a single incident was extraordinarily severe, or that a series of

incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." *Desardouin v. City of Rochester*, 708 F.3d 102, 105 (2d Cir. 2013) (citation and internal quotation marks omitted). Generally, a hostile-work-environment claim is assessed based on "the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Littlejohn*, 795 F.3d at 321 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)); *Williams v. Cty. of Westchester*, 171 F.3d 98, 100–01 (2d Cir. 1999) (holding that, to meet his burden, a plaintiff must show "more than a few isolated incidents" and that "evidence solely of 'sporadic racial slurs' does not suffice").

Here, the facts alleged in support of Plaintiff's hostile-work-environment claims are clearly deficient. As with his discrimination claims, Plaintiff points to the comments about his accent (Opp'n at 8), but he fails to specify how often these comments were directed at him. Moreover, the remarks at issue are not so severe as to create an abusive working environment, since it is well established that "'[s]imple teasing, offhand comments, or isolated incidents of offensive conduct (unless extremely serious) will not support' a hostile work environment claim." *Gallo v. Alitalia-Linee Aeree Italiane-Societa per Azioni*, 585 F. Supp. 2d 520, 536 (S.D.N.Y. 2008) (quoting *Petrosino v. Bell Atlantic*, 385 F.3d 210, 223 (2d Cir. 2004)); *see also Harris*, 510 U.S. at 21 ("mere utterance of an . . . epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII." (citation and internal quotation marks admitted)). Thus, Plaintiff's allegations that his co-workers "commented" on his foreign accent and inability to communicate with customers are clearly insufficient to establish "a workplace permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Littlejohn*, 795 F.3d at 320–21 (citation and internal quotation marks omitted).

Similarly, although Plaintiff also alleges that he once had to pay out-of-pocket for a non-paying customer's haircut, in contrast to white employees, a "single isolated instance of harassment will not suffice to establish a hostile work environment unless it was extraordinarily severe." *Howley v. Town of Stratford*, 217 F.3d 141, 153 (2d Cir. 2000) (citation and internal quotation marks omitted). Here, Plaintiff's allegation that he was singled out to pay out of pocket for one haircut does not come close to the level of harassment courts in this circuit have found to be "extraordinarily severe." *Albert-Roberts v. GGG Constr., LLC*, 542 F. App'x 62, 64 (2d Cir. 2013) (affirming dismissal of hostile-work-environment claim where plaintiff's colleague once referred to plaintiff's husband using a racist epithet).

In sum, Plaintiff has not pointed to any single incident that could be considered extraordinarily severe and has failed to show that his workplace was permeated with continuous and concerted hostility. Accordingly, the Court dismisses Plaintiff's Title VII and Section 1981 hostile-work-environment claims.

### D. Retaliation

Plaintiff next contends that Defendants retaliated against him in violation of Title VII and Section 1981 (FAC ¶¶ 47–48, 50, 56), which prohibit an employer from retaliating against an employee because he

has engaged in a protected activity. *See Littlejohn*, 795 F.3d at 315. To establish a *prima facie* case of retaliation under those statutes, a plaintiff must show: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Id.* at 316 (citation and internal quotation marks omitted). As with a discrimination claim, "[t]he allegations in the complaint need only give plausible support to the reduced *prima facie* requirements that arise . . . in the initial phase of [employment discrimination] litigation." *Id.*

With respect to the first element of a *prima facie* case – engagement in a protected activity – a plaintiff suing for retaliation "need not prove that the conditions against which he protested actually amounted to a violation of Title VII." *Bampoe v. Coach Stores, Inc.*, 93 F. Supp. 2d 360, 371 (S.D.N.Y. 2000); *see also Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs*, *P.C.*, 716 F.3d 10, 14 (2d Cir. 2013). Rather, Plaintiff need only demonstrate that he had a "good faith, reasonable belief that the underlying challenged actions of the employer violated [the] law." *Kelly*, 716 F.3d at 16 (quoting *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002)). In other words, the federal anti-retaliation provisions "protect[] not only those employees who opposed employment practices made unlawful by the statute but also those who have 'a good faith, reasonable belief that the underlying challenged actions of the employer violated the law' even if those actions were not, in fact, unlawful." *Morris v. David Lerner Assocs.*, 680 F. Supp. 2d 430, 442 (E.D.N.Y. 2010) (quoting *McMenemy v. City of Rochester*, 241 F.3d 279, 283 (2d Cir. 2001)). At the same time, the requirement that Plaintiff's belief be objectively reasonable ensures that "a retaliation claim is not a 'tactical coercive weapon that may be turned against the employer as a means for the asserted victims to advance their own retaliatory motives and strategies.'" *Wolf v. Time Warner, Inc.*, No. 09-cv-6549 (RJS), 2011 WL 856264, at *8 (S.D.N.Y. Mar. 3, 2011) (quoting *Spadola v. New York City Transit Auth.*, 242 F. Supp. 2d 284, 292 (S.D.N.Y. 2003)). "The objective reasonableness of an employee's belief that the employer has violated Title VII must 'be measured against existing substantive law,' because a failure to do so would 'eviscerate the objective component of our reasonableness inquiry.'" *Sosa v. Local Staff, LLC*, 618 F. App'x 19, 19–20 (2d Cir. 2015) (quoting *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1351 (11th Cir. 1999)).

On the current record, Plaintiff's allegations of mistreatment are insufficient to support a plausible inference that he possessed an *objectively reasonable*, good-faith belief that he was experiencing discrimination. Once again, Plaintiff's allegations of race discrimination and hostile work environment are premised entirely on the vague, stray remarks concerning his accent and the single episode in which he was required to pay out-of-pocket for a dissatisfied customer's haircut. Whatever Plaintiff's subjective beliefs at the time, these incidents are simply inadequate to support an objectively reasonable belief of discrimination. With respect to the remarks by Plaintiff's colleagues regarding his accent, the Court finds these to be, at most, "inappropriate but not abhorrent," and not enough to support "in the mind of an objective listener" a violation of the law. *Sosa v. Medstaff, Inc.*, No. 12-cv-8926 (NRB), 2014 WL 4377754, at *7 (S.D.N.Y. Sept. 4, 2014), *aff'd sub nom. Sosa*, 618 F. App'x at 19; *see also Holmes v. Long Island R.R. Co.*, No. 96-cv-6196 (NG), 2001 WL

797951, at *6 (E.D.N.Y. June 4, 2001) ("Isolated, minor instances of offensive utterances could not provide an objectively reasonable basis for believing that a Title VII violation had occurred."). Similarly, because the single incident in which Plaintiff had to pay for the non-paying customer's haircut was "at worst an isolated incident that cannot remotely be considered extremely serious, as Title VII requires," Plaintiff's "belief that it was unlawful was [likewise] not objectively reasonable." *Sosa*, 618 F. App'x at 20 (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001)).

Accordingly, the Court concludes that Plaintiff's belief that he was opposing practices prohibited by Title VII and Section 1981 was not objectively reasonable, and that his retaliation claim must also be dismissed.

E. Claims Under NYSHRL and NYCHRL

Having dismissed Plaintiff's federal claims, the Court next turns to whether it should exercise jurisdiction over Plaintiff's NYSHRL and NYCHRL claims. As the Second Circuit has instructed, in most cases where all federal claims have been dismissed prior to trial, "the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." *Valencia ex. rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). For this reason, courts in the Second Circuit "regularly decline jurisdiction over NYSHRL and NYCHRL claims once the federal employment claims have been dismissed." *Morant v. Physicians Affiliate Grp. of N.Y., P.C.*, No. 14-cv-0067 (TPG), 2014 WL 3964153, at *2 (S.D.N.Y.

Aug. 13, 2014) (quoting *Harris v. NYU Langone Med. Ctr.*, No. 12-cv-454 (RA), 2014 WL 941821, at *2 (S.D.N.Y. Mar. 11, 2014)). Therefore, although the Court is skeptical that Plaintiff has pleaded facts sufficient to support claims even under the more liberal NYCHRL standard, *see Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009), the Court declines to exercise jurisdiction and dismisses Plaintiff's causes of action under NYSHRL and NYCHRL without prejudice, *see Siegel v. Apergis*, 610 F. App'x 15, 16 (2d Cir. 2015) ("[W]hen a court dismisses for lack of subject-matter jurisdiction, that dismissal must be without prejudice.").

IV. DEFENDANT'S REQUEST TO FILE AN EXPEDITED SUMMARY JUDGMENT MOTION

The Court is also in receipt of letters from the parties, dated July 2 and 6, 2015, concerning Defendants' request to file an expedited summary judgment motion on the limited issue of whether Plaintiff's Title VII claims are time-barred. (Doc. Nos. 30, 31.) Having dismissed Plaintiff's claims, the Court denies Defendants' request as moot.

V. CONCLUSION

IT IS HEREBY ORDERED that Plaintiff's complaint is DISMISSED. The Clerk of the Court is respectfully directed to terminate the motion pending at docket number 21 and close this case.

SO ORDERED.

RICHARD J. SULLIVAN
United States District Judge

Dated: March 29, 2016
New York, New York

\*   \*   \*

Plaintiff is represented by Christopher L. Van De Water and Gregory William Kirschenbaum of The Arce Law Group, P.C., 30 Broad Street, 35th Floor, New York, New York 10009.

Defendants are represented by Thomas D. Shanahan of Thomas D. Shanahan, P.C., 551 Fifth Avenue, Suite 616, New York, New York 10176.

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/29/16